# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**J.B.,**
  *By next friend Patricia Peña,*

  Plaintiff,

  v.                                                          **Case No. 17-CV-193**

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

  Defendant.

# DECISION AND ORDER

Patricia Peña alleges that her minor son, J.B., is disabled because he suffers from several mental impairments that seriously interfere with his functioning. She sought supplemental security income on his behalf, but an administrative law judge (ALJ) denied the application, finding that J.B.'s impairments did result in marked or severe functional limitations. Ms. Peña now seeks judicial review of that decision.

Ms. Peña generally argues that the ALJ did not fully consider how J.B.'s impairments affect his daily life. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. For the reasons that follow, the Court agrees with the Commissioner and therefore will affirm her decision denying J.B. disability benefits.

I.  **Background**

J.B. was born on September 2, 2005. Transcript 35, ECF Nos. 15-2–15-12. On June 29, 2012, J.B.'s mother, Patricia Peña, applied for supplemental security income on his behalf. *See* Tr. 198–206 & 209–28. Ms. Peña alleged that J.B. was disabled as of August 1, 2008, on account of attention deficit hyperactivity disorder (ADHD) and a learning disorder. Tr. 219 & 223. After the Social Security Administration (SSA) denied the application initially, Tr. 63–72, and upon reconsideration, Tr. 73–84, Ms. Peña requested a hearing before an ALJ, *see* Tr. 110–15.

The administrative hearing was held on November 10, 2015, before ALJ Brent Bedwell. Tr. 30–62. J.B. had a non-attorney representative at the hearing. *See* Tr. 30–33, 107–09 & 194–96. At the time of the hearing, J.B. was in fourth grade. Tr. 35. He was living in Milwaukee, Wisconsin, with his mother, older sister, grandparents, and "dede." Tr. 40 & 45. J.B. testified that he did "good" in school but that he got in trouble for being bad, disrespecting his teacher, and running in the hall. Tr. 35–37. He had several school friends and spent his free time playing with his cousin. Tr. 35–36 & 42. Ms. Peña testified that her son struggled in school and had many behavior problems, though he was doing better than the preceding schoolyear. Tr. 48–50. She indicated that J.B. did not care about consequences and that he had talked about hurting himself in the past. Tr. 55 & 57–58. Ms. Peña described her son as being very defensive, angry, aggressive, and disrespectful. Tr. 52–53.

The ALJ followed the three-step sequential evaluation process, and on November 27, 2015, he issued a decision unfavorable to J.B. Tr. 9–29. The ALJ determined that (1) J.B. had not engaged in substantial gainful activity since his application date; (2) J.B. suffered from five "severe" impairments: ADHD, mood disorder/depression, conduct disorder (impulse control and/or oppositional defiant disorder), borderline intellectual functioning, and a learning disorder; and (3) J.B. did not suffer from an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a presumptively disabling impairment. *See* Tr. 12–25. Based on those findings, the ALJ concluded that J.B. was not disabled.

Thereafter, the Appeals Council denied Ms. Peña's request for review, *see* Tr. 1–7 & 314, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Ms. Peña filed this action as next friend of J.B. on February 13, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 5 & 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). The Commissioner has filed a brief in support of the ALJ's decision. Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 25. Ms. Peña, who is proceeding without the assistance of counsel, has filed several letters in support of her son's appeal, *see* ECF Nos. 20, 22 & 23, as well as

additional evidence she would like the Court to consider, *see* ECF Nos. 7, 12–13 & 16–17.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, courts "may not re-weigh the evidence or substitute [their] judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and

4

logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

### III. Discussion

Ms. Peña maintains that J.B. is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law and regulation. *See* Compl. p. 3.

## A. Legal framework

According to the Social Security Act, an individual under the age of eighteen is "disabled" only if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(C)(i). ALJs use a three-step sequential evaluation process for evaluating child disability claims. Under that process, a child is disabled if (1) he has not engaged in substantial gainful activity since his alleged onset of disability; (2) he suffers from a medically determinable impairment or combination of impairments that is severe; and (3) his impairment or combination of impairments is of a severity to meet, medically equal, or functionally equal the criteria of any impairment listed in the Act's regulations as presumptively disabling. *See* 20 C.F.R. § 416.924(a)–(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B.

In determining whether an impairment functionally equals a listing, the ALJ assesses its severity in six domains of the child's functioning: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Jelinek v. Astrue*, 662 F.3d 805, 810 n.2 (7th Cir. 2011) (citing 20 C.F.R. § 416.926a(b)(1)). "To functionally equal a listing, the ALJ must find an 'extreme' limitation in one category or a 'marked' limitation in two categories." *Jelinek*, 662 F.3d at 810 n.2 (citing 20 C.F.R. § 416.926a(a), (e)(2)(i)).

A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A child's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." *Id.* A marked limitation "also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.* On a standardized test, a marked limitation may be evidenced by "scores that are at least two, but less than three, standard deviations below the mean." *Id.*

An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). A child's "day-to-day functioning may be very seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." *Id.* An extreme limitation "also means a limitation that is 'more than marked.'" *Id.* However, it "does not necessarily mean a total lack or loss of ability to function." *Id.* On a standardized test, an extreme limitation may be evidenced by "scores that are at least three standard deviations below the mean." *Id.*

**B. Legal analysis**

Liberally construed, Ms. Peña appears to argue that the ALJ erred in evaluating the severity of J.B.'s mental impairments at steps two and three of the sequential evaluation process. The Court will address those arguments in turn, as

7

well as the impact of the additional evidence Ms. Peña submitted in support of her son's disability claim.

### 1. Whether the ALJ erred in evaluating the severity of J.B.'s impairments at step two

Ms. Peña claims that J.B. suffers from mood disorders, ADHD, separation anxiety, depression, a sleeping disorder, anger issues, impulse control disorder, and a learning disorder. *See* ECF Nos. 20 & 23. The ALJ determined at step two that all but two of those impairments caused more than minimal functional limitations. *See* Tr. 15. Though the ALJ did not mention separation anxiety or a sleep disorder, any such error was harmless because he found at least one severe impairment and, therefore, continued to the next step in the sequential evaluation process. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927–28 (7th Cir. 2010)).

Moreover, Ms. Peña has not cited any evidence to support a separation anxiety or sleep disorder diagnosis. Neither J.B. nor his mother testified about these issues, and the medical records do not appear to reference any significant limitations resulting from them. Ms. Peña also has failed to explain how these alleged impairments affect J.B.'s functioning. Accordingly, the ALJ did not commit reversible err in evaluating the severity of J.B.'s impairments at step two.

### 2. Whether the ALJ erred in evaluating the severity of J.B.'s impairments at step three

Ms. Peña also appears to argue that the ALJ erred in finding that J.B.'s mental impairments did not functionally equal the severity of a presumptively

8

disabling impairment. She does not point to any specific error in the ALJ's decision. Rather, she generally claims that the ALJ failed to fully consider all of J.B.'s impairments and the effects they have on his daily functioning, including: his academic struggles, his behavior issues at school, his unpredictable and sometimes dangerous conduct, his difficulty getting along with others, and his side effects from medications. *See* ECF Nos. 20, 22 & 23.

In fact, the ALJ thoroughly discussed J.B.'s alleged impairments but reasonably determined that they did not result in marked limitations in two of the six domains of functioning or an extreme limitation in one domain. The ALJ based his determination on a review of the entire record, including J.B.'s hearing testimony, Ms. Peña's hearing testimony, J.B.'s medical records, and J.B.'s school records. The ALJ also considered all of the opinion evidence contained in the record. *See* Tr. 15–25. While Ms. Peña understandably disagrees with how the ALJ weighed this evidence, the ALJ's step-three finding is undoubtedly supported by substantial evidence.

Regarding academic issues, the ALJ found that J.B. suffered from a learning disorder; was a grade level behind in math, reading, and writing; and received special education services. His IQ, however, was consistently in the upper level of borderline intellectual functioning or the low-average range. Tr. 367–68, 370 & 461. J.B.'s individualized education program (IEP) reflects that, when focused, he tried hard, did well with one-on-one instruction, and turned in his homework. Tr. 501. Also, J.B.'s academic performance was significantly impacted by his excessive

9

absenteeism. *See* Tr. 366, 417 & 501. Despite any academic struggles, Ms. Peña testified at the hearing that J.B. had made progress since the previous year, Tr. 48–50, and he was never held back in school.

The ALJ also acknowledged J.B.'s behavior issues. Specifically, the ALJ recognized that J.B. had difficulty controlling his anger, got in trouble in school for disrespecting his teachers and running in the hall, and engaged in dangerous conduct (including starting a fire inside his mother's bedroom, cutting a bus seat with a pocket knife, and threatening to hurt himself and others). Ms. Peña, however, testified that J.B.'s behavior problems had decreased compared to the previous schoolyear, and she had received fewer calls home and requests for a conference with the principal. Tr. 50. She further testified that J.B. listened more and was a lot calmer when taking his medications. Tr. 51.

Despite Ms. Peña's claims to the contrary, the ALJ reasonably determined that J.B. had less than a marked limitation in interacting and relating with others. The IEP team noted in June 2012 that J.B. did not have significant behavior problems at school as long as he was medicated. Tr. 370 & 458. Likewise, J.B.'s kindergarten and first-grade teachers indicated that J.B.'s issues playing cooperatively with other children and making and keeping friends were less than "serious." Tr. 232 & 290. J.B. in fact testified that he had friends at school, he played on a football team, and he spent his free time playing with his cousin. Tr. 35–36 & 42.

10

The ALJ noted in his decision that J.B. was prescribed various medications for his symptoms, including Vyvanse, Adderall, Focalin, Risperdal, and Clonidine. Tr. 17. Ms. Peña alleges that these medications provided only temporary relief and caused debilitating side effects, including suicidal thoughts. The record, however, does not support her claims. During his psychiatric evaluation, J.B. did not have any suicidal ideations. Tr. 393. Likewise, Ms. Peña testified at the administrative hearing that the only side effect J.B. experienced was lack of appetite. Tr. 51. And, to the extent Adderall did make J.B. more aggressive, he was no longer taking that medication at the time of his hearing. Tr. 60.

Ms. Peña also alleges that J.B.'s impairments likely will result in long-term functional limitations. Surely that is an unfortunate possibly. But it is also irrelevant to this Court's analysis. The relevant period in this case is the time between the application date and the ALJ's decision. If J.B.'s condition deteriorates, he can always reapply for disability benefits.

In sum, the Court finds that the ALJ fully considered J.B.'s impairments and the functional limitations resulting therefrom. His finding at step three that J.B.'s impairments do not functionally equal the severity of a listed impairment is supported by substantial evidence.

### 3. Whether remand is warranted based on the additional evidence submitted by Ms. Peña

Ms. Peña submitted a number of documents in support of J.B.'s claim for benefits, including: an IEP plan that began in February 2017 and a Behavioral Intervention Plan completed in February 2017, ECF No. 7; a reevaluation notice

11

and consent form that Ms. Peña signed in February 2017, ECF No. 12; a Conners 3™ – Parent Response Booklet completed in March 2018 and an IEP meeting invitation dated March 2017, ECF No. 13; an Evaluation Report dated April 2017, an IEP plan beginning in April 2017, and a Plan of Care for dated March 2017, ECF No. 16; and various prescriptions and appointment reminders, ECF No. 17. Ms. Peña, however, did not reference any of these documents in the letters she submitted to the Court.

Nevertheless, the evidence does not warrant remand here. All of this evidence post-dates the ALJ's decision. Because the ALJ never had the opportunity to consider the evidence, it cannot serve as the basis for reversal pursuant to sentence four of 42 U.S.C. § 405(g). *See Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817–18 (7th Cir. 1993). Likewise, Ms. Peña has not requested a sentence-six remand. *See* § 405(g) (sixth sentence) (allowing federal court to remand a matter to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that J.B. was not disabled as of June 2012. The Court therefore will affirm the ALJ's decision denying Ms. Peña's claim for disability benefits on behalf of her minor son.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge